MILLBANK *v.* THE SCHOONER "A. P. CRANMER" and others.

(*District Court, E. D. New York.* January 24, 1880.)

COLLISION—STEAM VESSEL AND SAILING VESSEL.—RULE 20, REV. ST. § 4233.—Rule 20, Rev. St. § 4233, that a steam vessel should keep out of the way of a sailing vessel does not apply to a tow composed of two steam tugs and 17 canal boats.

In admiralty.

BENEDICT, J. On the twenty-fourth day of July, 1877, the schooner A. P. Cranmer and the canal boat John A. Heister came in collision in the bay of New York and the canal boat was sunk. At the time of the collision the schooner was sailing down the bay upon the starboard tack, and was between Bedloe's Island and the can-buoy on Robbins Reef. The canal boat was the outside boat on the port side of the head tier of a tow of 17 canal boats then being towed from Amboy to New York by two tugs—the W. C. Nichols and the Sammie. The tugs were towing one ahead of the other, the Nichols being the leading boat, and were pulling the tow at

the speed of about two and a half miles an hour. It was a clear day, a working breeze blowing, and no other vessels moving in the vicinity. The schooner passed the two tugs in safety to the westward. Just about as she passed the Sammie, in order to avoid running into the canal boats, she hove her wheel down; but as she swung, one of the towing hawsers caught under her tuck and threw her off from the wind again, so that she ran head on into the libellant's boat, causing her to sink instantly.

This action is brought against the schooner and both the tugs to recover the loss thus caused to the libellant, and the question to be determined is, whose fault was it that caused the collision? No fault on the part of the canal boat is pretended. No fault on the part of the Sammie has been shown, for she was not the leading boat and was subject to the movements of the tug ahead. The direction of the tow was with the Nichols alone. The only question, therefore, is whether the collision was caused by the fault of the Nichols or the fault of the schooner, or by the faults of both.

If this were the case of a sailing vessel and a steam vessel its disposition would be easy enough, for it would be controlled by the rule which compels a steam vessel to keep out of the way of a sailing vessel. But it is not such a case. Here the collision was between a schooner and a canal boat, the former moving by her sails, the latter being fastened in a tow composed of 17 canal boats and being pulled along by two steamboats. If the sailing vessel and the canal boat are to be deemed the two colliding forces, the rule governing steam vessels is applicable to neither. If, on the other hand, the 17 canal boats and tugs fastened together, as they were, are to be deemed a single vessel, so far as the application of the sailing rules are concerned, then such combined vessel cannot, as I conceive, be deemed to be a "steam vessel under steam," within the meaning of the sailing rules prescribed by the statutes of the United States.

The provision of rule 20; (old art. 15, § 4233, Rev. St.) that a steam vessel shall keep out of the way of a sailing vessel, if intended to apply to any steam vessel having a tow,

cannot be supposed to be intended to apply to a combined mass of seventeen canal boats and two tug boats; for in the case of such a tow, although the motive power is steam, the vessel with steam was by no means free, but hampered by connection with canal boats, so that neither the steamboat nor the mass of boats possessed any considerable part of that power to control their own movements which is characteristic of a steam vessel when steaming alone, and is the foundation of the rule that requires steam vessels to keep out of the way of a sailing vessel. This case cannot, therefore, be disposed of by a reference to sailing rule 20, (old article 15,) but must be decided in accordance with those general principles that lie at the bottom of all sailing rules, and are applied by courts of admiralty to cases as they arise. The test of responsibility in this case is, therefore, to be found in the ability possessed by the respective vessels to control their own movements and avoid collision. And when the position of these vessels is considered with reference to this test, it is apparent the schooner could without any considerable difficulty have placed herself sufficiently far to westward of the tow to avoid all danger of collision. If she had a free wind, as several witnesses say, she had only to haul a little nearer to the wind. If, as she contends, her course was close to the wind, she could have worked to windward sufficiently to avoid the canal boats by luffing into the wind. The way was clear, the wind sufficient, the schooner light; and, so far as appears, there was nothing to prevent the successful accomplishment of such a manœuvre, and this was what the schooner attempted. She failed in the attempt only because she was caught by the hawser extending from the Sammie to the canal boats—a circumstance attributable solely to the fact that she delayed action until too late. Her fault, therefore, consists in omitting to put her helm down until she was too close to the canal boats.

As supporting this view of the duty attaching to the schooner under the circumstances stated, reference is made to the case of *The Arthur Gordon and the Independence*, 1

Lush. 270, cited with approval in the case of *The Electra,* 7 Ben. 349. But the case of the tow was far different from that of the schooner. On the part of the tow—a mass of boats moving slowly in the tide, and compelled to keep in position—the ability to take effective action to avoid the schooner was small indeed.

It has been strongly contended that it was possible for the Nichols, and accordingly her duty, to move her tow further to the eastward when the near approach of the schooner was observed. But while, in view of the vast amount of property that is moved by tugs in late years, and the care required to preserve the boats from accident, I am not inclined to relieve tow boats from the responsibility of taking all possible means of avoiding collision, I am not satisfied that in this case there was anything possible to be done by the tug, after the danger of collision was presented to their minds, that would have prevented the collision. If anything was possible, it was to swing the tow a little to east; but although there is evidence from a single witness, that affords some foundation for the contention that such a movement could have carried the canal boats far enough to the eastward to have escaped collision with the schooner, I am not satisfied that the attempt would have proved of any avail.

My conclusion, therefore, is, that inasmuch as the tug, which had the direction and control of the tow, could do nothing after the danger was apparent towards moving the canal boats further to the eastward, and inasmuch as the schooner, when she saw herself in danger of running into the canal boats, could without serious inconvenience have moved further to westward and so have avoided the collision, the schooner alone was in fault, and is responsible for the loss in question.